# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 3:17-cr-351-JMC-1[1] |
| v. | |
| MICHAEL CARTER a/k/a "Blaze," | **ORDER AND OPINION** |
| Defendant. | |

Defendant Michael Carter, also known as "Blaze," is a prisoner currently serving a sentence of two hundred forty (240) months in the Bureau of Prisons. (*See* ECF No. 45.)

This matter is before the court on Carter's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255. (ECF No. 63.) The United States of America (the "Government") expressly opposes Carter's Motion to Vacate (ECF No. 93) and moves for summary judgment on the merits. (ECF No. 94.) For the reasons set forth below, the court **DENIES** Carter's Motion to Vacate and **GRANTS** the Government's Motion for Summary Judgment.[2]

## I. RELEVANT BACKGROUND TO PENDING MOTIONS

After having been convicted of a state felony offense, Carter "was found with a firearm on December 22, 2012 . . . and again on June 11, 2013 . . . ." (ECF No. 1-1 at 4 ¶ 10.) Thereafter, on April 18, 2017, the Grand Jury named Carter in an Indictment containing the following two (2)

---

[1] This matter is related to *Carter v. United States*, Civil Action No. 3:18-cv-02707-JMC.
[2] The court observes that in addition to his Motion to Vacate, Carter also filed a Motion to Dismiss (ECF No. 84), a Motion Opposing Any Further Extensions (*id.*), a Motion for Sanctions (ECF No. 89), a Motion for Entry of Default (ECF No. 90), a Motion to Amend (ECF No. 92), three (3) Motions to Expedite (ECF Nos. 104, 114, 115), a Motion for Recusal (ECF No. 105), two (2) Motions for Writ of Mandamus (ECF Nos. 106, 111), and a Motion to Withdraw His Plea Agreement (ECF No. 117). These Motions generally attempt to substantively supplement the Motion to Vacate and/or provide a procedural basis for its expedient resolution. However, because the court denies Carter's Motion to Vacate, these remaining pending Motions are also **DENIED**.

counts:

(1) That on or about December 22, 2012, in the District of South Carolina, the defendant, MICHAEL KENNY CARTER, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, a firearm, that is, a Bersa, .380 caliber semi-automatic pistol, which had been shipped and transported in interstate and foreign commerce; In violation of Title 18, United States Code, Sections 922(g)(l), 924(a)(2), and 924(e).

(2) That on or about June 11, 2013, in the District of South Carolina, the defendant, MICHAEL KENNY CARTER, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, a firearm, that is, a Taurus semi-automatic pistol, which had been shipped and transported in interstate and foreign commerce; In violation of Title 18, United States Code, Sections 922(g)(l), 924(a)(2), and 924(e).

(ECF No. 4 at 1–2.)

During the pendency of the aforementioned Indictment, the Government was conducting an ongoing investigation regarding Carter's alleged involvement in child sex trafficking. (ECF No. 1-1 at 2 ¶ 6.) The Government communicated to Carter's appointed counsel, Assistant Federal Public Defender Allen Burnside, that it would seek to indict Carter under 18 U.S.C. § 1591[3] if he

---

[3] 18 U.S.C. 1591 provides as follows:

(a) Whoever knowingly—(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

(b) The punishment for an offense under subsection (a) is—(1) if the offense was effected by means of force, threats of force, fraud, or coercion . . . , or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and

was unwilling to cooperate in the child sex trafficking investigation. (ECF No. 93-1 at 2.) On May 22, 2017, Carter signed a written Plea Agreement agreeing to "plead guilty to an Information charging, enticement of a minor, in violation of Title 18, United States Code, § 2422."[4] (ECF No. 29 at 1 ¶ 1.) In the Plea Agreement, Carter and the Government stipulated pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure "that the appropriate disposition of this case (irrespective of any fines and/or forfeitures) is a sentence of 240 months actual incarceration, . . . ." (ECF No. 29 at 10 ¶ 14.)

Accordingly, on May 30, 2017, the United States Attorney filed an Information charging Carter with the following:

> That on or about November 12, 2016, in the District of South Carolina, the defendant, MICH[]A[E]L CA[R]TER, a/k/a "Blaze," and others who are known, as principals, aiders and abettors, and co-participants in jointly undertaken criminal activity, using a facility and means of interstate communication, that is, a computer connected to the internet and a cellphone, knowingly attempted to persuade, induce, and entice individuals who had not attained the age of 18 years to engage in a sexual activity for which any person can be charged with a criminal offense; In violation of Title 18, United States Code, Section 2422(b).

(ECF No. 27.) On May 31, 2017, the court accepted Carter's change of plea (ECF Nos. 33, 34) and sentenced him to the parties' stipulated sentence of two hundred forty (240) months imprisonment on March 8, 2018. (ECF Nos. 44, 45, 46.) At Carter's sentencing, the Government provided the court with the following overview as to why the case against Carter resolved itself in

---

imprisonment for any term of years not less than 15 or for life; or (2) if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

[4] 18 U.S.C. § 2422(b) provides that "[w]hoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life."

3

a stipulated sentence:

> Ultimately Mr. Carter pled to a one-count information charging a crime that is still a sex crime but has a cap of 20 years. As the court is aware under 2G1.3 of the Sentencing Guidelines, had Mr. Carter been charged and convicted of a 159[1] [sic] charge with juveniles, most likely his sentence would have been well over 20 years. And if he had gone to trial, it most likely [would have] been a life sentence. So through the advice of Mr. Burnside and Mr. Shealy, Mr. Carter entered into [a] cooperation plea agreement with the Government. We agreed to [an] 11(c)(1)(C) for his timely cooperation. Again, he received the benefit on the front end.

(ECF No. 109 at 3:1–12.) The court entered the Judgment on March 8, 2018. (ECF No. 45.) Carter filed a Notice of Appeal on March 19, 2018 (ECF No. 49), but moved to voluntarily dismiss that appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure on March 29, 2018. (*See* ECF Nos. 56, 93-2 at 1–2.)

On October 4, 2018, Carter filed the instant Motion to Vacate pursuant to 28 U.S.C. § 2255. (ECF No. 63.) The premise for Carter's Motion is that Burnside advised him to plead guilty and agree to a sentence of two hundred forty (240) months when Carter's Pre-Sentence Investigation Report ("PSR") stated a recommended guideline range of one hundred sixty-eight (168) months to two hundred ten (210) months imprisonment for the offense. (ECF No. 63-1 at 1–2 (referencing ECF No. 39-1 at 1).) In this regard, Carter complains that Burnside (1) negotiated with the Government without knowing Carter's guideline range, (2) coerced Carter into signing a plea agreement and stipulating to a sentence of two hundred forty (240) months, (3) informed Carter that he could not withdraw his plea or appeal it, (4) forced Carter to sign a document purporting to rescind his appeal, and (5) failed to challenge inaccuracies in the PSR. (*Id.* at 1–6.) Each of these complaints is construed as an attempt by Carter to demonstrate that he did not enter his plea agreement knowingly and voluntarily. Additionally, on May 28, 2019, Carter filed a Motion to Amend under Rule 15(a) in which he further argued that the court lacked subject matter jurisdiction over his federal sex offense case because the same sex offense was already being prosecuted by

the state at that time.⁵  (ECF No. 92.)  Subsequently, on June 3, 2019, the Government filed a Motion for Summary Judgment.  (ECF No. 94.)

The court considers below the merits of the parties' respective Motions.

## II.     JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255, which states that a federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court.

## III.    LEGAL STANDARD

A.      <u>Motions to Vacate Generally</u>

A prisoner in federal custody under sentence of a federal court may petition the court that imposed the sentence to vacate, set aside, or correct the sentence.  *See* 28 U.S.C. § 2255.  The prisoner may be entitled to relief upon a showing that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  A petitioner collaterally attacking his sentence or conviction pursuant to § 2255 bears the burden of proving his grounds for collateral attack by a preponderance of the evidence.  *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004) (citing *Miller v. United States*, 261 F.2d 546 (4th Cir. 1958)).  In ruling on a § 2255 motion, the court may dismiss the motion without a hearing where it conclusively

---

⁵ The court observes that Carter's argument that this court lacked jurisdiction to provide the forum for his prosecution by the Government is patently meritless.  *See, e.g.*, *Rinaldi v. United States*, 434 U.S. 22, 28 (1977) ("[T]he Constitution does not deny the State and Federal Governments the power to prosecute for the same act." (citing *Bartkus v. Illinois*, 359 U.S. 121 (1959); *Abbate v. United States*, 359 U.S. 187 (1959))); *Al-Marri v. Hanft*, 378 F. Supp. 2d 673, 681 (D.S.C. 2005) ("It is unreasonable to think that federal charges cannot be brought against an individual simply because he is being held on pending state charges.").

shows from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief. 28 U.S.C. § 2255(b) (noting that a hearing is not required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief).

B.    Ineffective Assistance of Counsel

Under the Sixth Amendment of the United States Constitution, a criminal defendant is guaranteed the assistance of counsel for his or her defense. U.S. Const. amend. VI. The purpose of the Sixth Amendment's guarantee of effective counsel is to ensure that a defendant has effective counsel at all critical stages of a criminal proceeding. *See Montejo v. Louisiana*, 566 U.S. 788, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227-28 (1967)). "To prevail on an ineffective assistance of counsel claim under the Sixth Amendment, [][Carter] must show both that (1) his counsel was professionally unreasonable and (2) his counsel's deficient performance prejudiced [][Carter]'s defense." *United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 691–92 (1984)). "A court need not address both components of this inquiry if [a] defendant makes an insufficient showing on one." *Furnace v. United States*, No. 4:11-cr-00014-RBH, 2011 WL 13177178, at *2 (D.S.C. Dec. 1, 2011) (citing *Strickland*, 466 U.S. at 697).

In regard to the performance prong, a defendant must identify specific acts or omissions of counsel that are not the result of reasonable, professional judgment. *Strickland*, 466 U.S. at 690. In light of all circumstances, keeping in mind that counsel's function is to advance the adversarial process, the court must determine whether the identified acts or omissions were outside the range of professional, competent assistance. *Id.* As such, "a [defendant] must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). "If a prisoner pleads guilty

on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases, . . . .'" *Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A court reviews "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Merzbacher*, 706 F.3d at 363 (quoting *Strickland*, 466 U.S. at 688).

Concerning the prejudice prong, a defendant must show that "counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "In order to satisfy the 'prejudice' requirement [in the context of a guilty plea], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). "Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

### IV. ANALYSIS

In this matter, Carter moves the court to vacate his sentence fundamentally complaining that his attorney, Burnside, violated Carter's constitutional rights by advising Carter to plead guilty and accept a stipulated sentence of two hundred forty (240) months when the recommended guideline range stated in the PSR was one hundred sixty-eight (168) months to two hundred ten (210) months imprisonment for the offense. (ECF No. 63-1.) At the outset, the court considered

Carter's claims in the context of the performance prong of the *Strickland v. Washington* test. In this regard, the court observes that Carter's allegations of deficient performance by Burnside are expressly contradicted by Carter's statements made under oath to the court during the change of plea hearing:

> Q. Okay. Now, have you had an opportunity to discuss this case with your attorney?
> A. Yes.
> Q. And by that, I mean you understand the Information that we just talked about that's been presented to you, as well as what the government's evidence would be against you if this case were to go to trial?
> A. Yes.
> Q. Did you also discuss your constitutional rights, including you right to plead guilty or go to trial?
> A. Yes.
> Q. And are you satisfied with your attorney?
> A. Yes.
> Q. To the extent you had any questions or issues or concerns, were you able to relay that to him?
> A. Yes.
> Q. And has he answered your concerns or questions to your satisfaction?
> A. Yes.
> Q. Okay.
> Burnside:
> Judge Childs, could I put something on the regard [sic] with regard to that, because there was a letter that was written to the Court by Mr. Carter early last week. Since that time he and I and his State attorney, Luke Sheal[]y, we've had two meetings with Mr. Carter. I think we've resolved the differences we were having then, so I think he would withdraw the complaints made in that letter.
> Q. Okay. Sir, is that correct?
> A. Yes.
> Q. You are satisfied with your attorney now and have dealt with all of your issues?
> A. Yes.

(ECF No. 93-4 at 7:19–9:1.)

> Q. Still want to plead guilty?
> A. Yes.
> Q. Have you and your attorney generally discussed the federal sentencing guidelines?
> A. Yes.

> Q. So you understand that what the government just presented you with is the statute, and that the guidelines could come out with a different recommended sentence based on what your prior record is and what your particular role is in the offense; do you understand that?
> A. Yes, ma'am.

(*Id.* at 12:17–13:2.)

> Q. Okay. Anyone forcing or threatening you to plead here today?
> A. No.
> Q. Doing so voluntarily?
> A. Yes.
> Q. And this is, again, after knowing what the Information says that you did, that you've accepted and waived your indictment, as well as what the evidence is against you?
> A. Yes.
> Q. And this is also knowing that you're giving up your other constitutional rights to plead here?
> A. Yes.
> Q. You satisfied with you Mr. Burnside has represented you?
> A. Yes.
> Q. Again, the prior disputes, you're waiving those, and that those are no longer applicable for you?
> A. Yes.
> Q. And so you are satisfied from now how he's representing you and feel like you have a good relationship with him now as you go forward with this particular plea?
> A. Yes.

(*Id.* at 13:23–14:8.)

> Q. All right. Sir, do you understand through the plea agreement you've got the sentence of potentially the 20 years, the 240 months, but then there are several provisions in there about you cooperating to work to help yourself with a lower sentence.
> A. Yes, ma'am.

(*Id.* at 26:18–23.)

> Q. You still wish to plead guilty?
> A. Yes, ma'am.

(*Id.* at 27:5–6.) Carter's sworn statements to the court on their own are generally enough to demonstrate that Burnside's representation did not fall below an objective standard of reasonableness for purposes of denying Carter's § 2255 Motion. *See, e.g., United States v.*

9

*Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.).

However, in this case, the court has before it additional factual support provided by both the Government and Burnside showing that he provided objectively reasonable assistance. Specifically, in support of its Motion for Summary Judgment, the Government provided the following observations:

> [T]he defendant's counsel greatly limited his liability through his negotiations with the Government. The defendant was convicted of enticement of a minor for the purposes of prostitution – a crime that carries up to life. Counsel secured plea agreements of 180 months – with no cooperation language and a plea agreement of 240 months with his ability to earn a sentence reduction through providing substantial assistance in the prosecution of another case and abiding by the terms and conditions of the plea agreement. The defendant chose the 240[-]month sentence.

(ECF No. 93 at 6–7.)

> The defendant also ignores the fact that his state charges and his firearm charges were dismissed through the plea negotiations. The defendant was in state custody, had the state charges not been dismissed and he was convicted of the charges, he would have done his state sentence and federal sentence consecutively – thereby counsel provided him subjectively reasonable and beneficial representation.

(*Id.* at 7 n.4.) Additionally, Burnside offered the following specific responses to Carter's assertions of constitutionally deficient representation:

> The government informed Affiant [Burnside] that if Carter did not cooperate, they intended to seek an indictment under 18 U.S.C. § 1591(b) (sex trafficking of children by force, fraud or coercion). Further, because of the "Session Memo,"[6] once that indictment was returned, Carter would not be allowed to plead to a lesser offense.

---

[6] The "Session Memo" appears to reference the May 10, 2017 Memorandum for All Federal Prosecutors authored by then United States Attorney General Jeff Sessions in which he announced that the policy of the United States Department of Justice from that date forward was to "charge

(ECF No. 93-1 at 2.)

> ln May of 2017, the government offered Carter the choice between two plea agreements. . . . The primary differences between Exhibit 2 (the plea agreement Carter signed) and Exhibit 3 (the other plea agreement that was offered), was that Exhibit 2 had a binding Rule 11(c)(1)(C) sentence of twenty years (with the opportunity to earn a downward departure), while Exhibit 3 had a Rule 1l(c)(1)(C) sentence of fifteen years (with no opportunity to earn a downward departure). Carter eventually selected and signed Exhibit 2 because he believed he could earn more than five years off of his sentence through cooperation.

(ECF No. 93-1 at 2–3.)

> Carter is correct that Affiant did not predict that his guidelines would be 168-210 months. Affiant believed that Carter would be a criminal history III, rather than II, because of an Assault 3rd Degree conviction from New York that was listed in his pretrial services report that was not reported in his presentence report. This would have caused his guideline range to be 188-235 months. . . . Affiant explained that he could only provide an "estimate" or a "prediction" as to his guidelines, not a guarantee. Carter never asked for objections to be filed to his presentence report.

(*Id.* at 3.)

> Carter indicated that he wanted to withdraw his plea because he felt he was innocent on a federal level because his crime did not affect interstate commerce. Affiant explained that the minimal impact his conduct had on interstate commerce was not a viable defense. Carter was given a copy of *United States v. Kaye*, 451 F. Supp. 2d[]775 (2006), which holds that use of a telephone or internet is the use of a facility of interstate commerce.

(ECF No. 93-1 at 4.)

> Affiant was concerned that because of the appellate waiver in Carter's plea agreement, Carter's appeal could be considered a breach of the plea agreement. This could have a negative impact on Carter's ability to receive a Rule 35.

(ECF No. 93-1 at 4–5.)

Upon the court's review of the foregoing, it is clear that Carter's complaints regarding his two hundred and forty (240) month sentence ignore the legal exposure he would have been subject

---

and pursue the most serious, readily provable offense." Jeff Sessions's Criminal Charging Policy, https://apps.washingtonpost.com/g/documents/national/jeff-sessionss-criminal-charging-policy/2432/ (last visited Jan. 3, 2020).

to if (1) he had not pleaded guilty as a result of Burnside's representation, (2) was indicted for violating 18 U.S.C. § 1591(b), and (3) was convicted and sentenced for violation of § 1591 and the felon in possession statutes. *E.g.*, *United States v. Trussel*, 961 F.2d 685, 690 (7th Cir. 1992) ("Even though Barker eventually received a 222-month sentence, his guilty plea was not a bad deal for him; the government significantly limited Barker's exposure at sentencing to a maximum of 20 years, *see* 21 U.S.C. § 841(b)(1)(C), by agreeing to drop four of the indictment's five counts against him and by agreeing not to file the information necessary under 21 U.S.C. § 851(a)(1) to expose Barker to § 841(b)(1)(C)'s possible 30-year sentence for second offenders."). Therefore, the court finds that Carter cannot demonstrate the requisite showing of substandard performance by Burnside under *Strickland*. Accordingly, Carter's claim of ineffective assistance of counsel fails.

## V. CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES** Defendant Michael Carter's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (ECF No. 63) and **GRANTS** the Government's Motion for Summary Judgment (ECF No. 94). The court further **DENIES** Defendant's Motion to Dismiss (ECF No. 84), Motion Opposing Any Further Extensions (*id.*), Motion for Sanctions (ECF No. 89), Motion for Entry of Default (ECF No. 90), Motion to Amend (ECF No. 92), three (3) Motions to Expedite (ECF Nos. 104, 114, 115), Motion for Recusal (ECF No. 105), two (2) Motions for Writ of Mandamus (ECF Nos. 106, 111), and Motion to Withdraw His Plea Agreement (ECF No. 117).

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c). A prisoner satisfies this standard by

demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this matter, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, the court **DENIES** Defendant Michael Carter a certificate of appealability.

    **IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

January 6, 2020
Columbia, South Carolina