UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No. 3:17-351-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| MICHAEL KENNY CARTER | ) | |
| _____ | ) | |

This matter is before the court upon the defendant's motions for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 295, 327, 337).[1] The defendant asserts various claims that he believes constitute extraordinary and compelling reasons for consideration of compassionate release. Those claims encompass his mental health/medical and family circumstances; claims of rehabilitation; and of sentencing errors that have created a sentence disparity between himself and other co-conspirators who were not charged in his criminal case.

The government has filed multiple briefs in opposition, arguing, among other things, that the defendant has not shown any extraordinary and compelling reasons for a reduction or release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. This matter is now ripe for review.

The court has carefully considered the record before it and conducted an

---

[1] The defendant has also filed numerous supplements and amendments to these motions which this court has also carefully considered.

individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motions are denied.

PROCEDURAL HISTORY

This case was originally assigned to the Honorable J. Michelle Childs in April 2017. Judge Childs took the defendant's guilty plea and also sentenced him on March 8, 2018 to a term of imprisonment of 240 months and a life term of supervision. The undersigned was reassigned this case on August 12, 2022 when Judge Childs was elevated to the D.C. Circuit Court of Appeals.

From a review of the docket in this case, it appears to this court that the defendant is a fervent filer in his post-judgment litigation. This court will briefly summarize the various filings of the defendant since his sentencing six years ago.

Although he filed a direct appeal of his original judgment and conviction, the defendant voluntarily dismissed that appeal several weeks after filing it. Six months later, he filed his first *pro se* motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 63). While that motion was pending from October 2018 until Judge Childs denied the motion on January 6, 2020, the defendant filed numerous motions for bail, for sanctions, for copies, for entry of default against the government, and to amend to add a claim of prosecutorial misconduct. The defendant filed a multitude of additional attachments to his original § 2255 motion as well as a motion to withdraw his plea agreement. He filed a motion to recuse the government's attorneys and for a writ of mandamus, and numerous

motions to expedite.

Judge Childs denied the defendant's § 2255 motion in an order filed on January 6, 2020 (ECF No. 122). Thereafter, the defendant's motion to extend time to appeal was denied as was first his motion to reconsider. While the appeal of his § 2255 denial was pending, the defendant filed a second motion to reconsider. He also filed a motion for emergency release, requests for "habeas corpus" bond, and a motion to dismiss for lack of jurisdiction. Then, on June 1, 2020, the defendant withdrew all of these motions (ECF No. 155).

On July 27, 2020, the defendant filed a motion to compel the government to file a motion to reduce his sentence (ECF No. 158). The government opposed the motion and Judge Childs ultimately denied the motion on December 15, 2021. During that time, the defendant filed motions to reopen his § 2255, to appoint counsel, to expedite the speedy resolution of his case, and for rulings on his first motion for compassionate release (ECF No. 170) which was not even fully briefed. Thereafter, he withdrew his first motion for compassionate release.

The defendant then filed a motion to recuse Judge Childs which she denied. Judge Child's opined that the defendant's primary grievance appeared to be his disagreement with the substance and time line of the court's rulings, not that Judge Childs had been impartial or biased against him (ECF No. 198).

The defendant next filed a motion to reconsider the denial of the motion for recusal. Then, a motion for bond pending resolution of the § 2255 motion was filed. Motions for a

3

certificate of appealability and to alter the judgment were also filed. On February 28, 2022, the defendant filed a successive § 2255 motion.

On March 14, 2022, the defendant filed his second motion for compassionate release (ECF No. 231). Therein he claimed that he was particularly susceptible to COVID-19 and that he had an extremely low white blood cell count. Judge Childs denied that motion because the defendant did not exhaust his administrative remedies. She also noted that even if she had waived the exhaustion requirement, the defendant's present circumstances would still not have merited compassionate release because the defendant failed to provide documentation of his illness and any medical opinion that his alleged condition was severe (ECF No. 244).

On August 18, 2022, this case was reassigned to this court. On September 28, 2022, this court denied the defendant's second § 2255 motion finding that the court lacked jurisdiction to consider a second or successive § 2255 if the petitioner did not receive pre-filing authorization (ECF No. 254). The defendant immediately filed a motion to reconsider that order of dismissal. A second motion for reconsideration of the order on the first motion for reconsideration was filed on October 19, 2022 (ECF No. 262). The defendant also filed an appeal of that denial. This court entered an order on May 2, 2023 denying the defendant's motion to dismiss, motion for default judgment, motion for hearing, and motion for reduction in BOP Financial Responsibility Program payments.

On May 15, 2023, the defendant filed another motion for reconsideration on the order denying the defendant's motion to dismiss. This court entered an order (ECF No. 283) again explaining that the court did not have jurisdiction over that motion. On June 12, 2023, the defendant filed another motion for reconsideration of the Order No. 283, and then proceeded to appeal this court's order. On July 28, 2023, this court denied the defendant's fourth motion for reconsideration of the motion for reconsideration of the order on the motion for reconsideration.

On August 17, 2023, the defendant filed his third motion for compassionate release (ECF No. 295) which is now pending. He filed various supplements to the motion, as well as a reply to the government's response in opposition. Then, on October 23, 2023, this court deferred ruling on the motion while a separate matter was on appeal. The defendant moved the court for an indicative ruling which this court denied. The defendant then dismissed one of his appeals.

On March 26, 2024, the defendant filed an amended motion for compassionate release (ECF No. 327) after the court allowed him 30 days to amend his earlier motion so that the new motion would be in compliance with the November 2023 U.S. Sentencing Guideline changes. Then, on July 15, 2024, the defendant filed another motion for compassionate release (ECF No. 337).

Meanwhile, the defendant filed a motion before this court for reconsideration of Judge Child's January 6, 2020 order denying his original § 2255 motion. This court denied the

motion, along with the defendant's motion for appointment of counsel and two earlier motions to reconsider.

The defendant asks this court to expedite a ruling on his motions for compassionate release and for a status update on his case. He has also filed a notice with this court that he intends to file a writ of mandamus with the Fourth Circuit Court of Appeals "alleging the inappropriate delay of his compassionate release which raises severe medical/mental health concerns which is depriving him of the ability to provide self care while serving his sentence." (ECF No. 350). He also expressed shock that this court denied another of his "non-medical" motions before ruling on his compassionate release motion which he says "raises grave concerns is being ignored."

*The Criminal Offenses and Sentencing*

The defendant was involved in the operation of a prostitution ring based in the Columbia area of South Carolina which involved the use of minors under the age of 18. In November 2016, the Richland County Sheriff's Department initiated an investigation after the mother of a minor runaway reported she believed her 15-year-old daughter was in the Columbia area of South Carolina with the defendant. Through the use of information provided by cooperating witnesses, the defendant was determined to operate a prostitution ring involving at least three minor females. Agents subsequently determined the defendant arranged to have two minor females transported from Augusta, Georgia, to Columbia, SC, with the knowledge that both girls were under the age of 18 and with the expectation they

6

would engage in sex acts for his financial benefit.  Upon their arrival in Columbia, SC, on

November 12, 2016, Carter had sex with one of the minor females, posted nude photos of her

on the Internet, and arranged for her to have sex with two men.  Additionally on this same

date, the defendant forced the second minor female to perform oral sex on him in his vehicle.

Investigators further determined the defendant enticed a third minor female to engage in acts

of prostitution from the defendant's hotel room on November 12, 2016.

The defendant was arrested in the District of South Carolina on November 16, 2016.

He was charged in a two count Indictment (ECF No. 5) with being a felon in possession of

a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e).

The defendant was also charged in a one-count Information (ECF No. 27) with

Enticement of Minors to Engage in Prostitution, in violation of 18 U.S.C. § 2422(b).

On May 31, 2017, the defendant signed a written Plea Agreement (ECF No. 29) to

Count 1 of the Information.  Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

Procedure, the government and defendant agreed that if the defendant complied with the

terms of the plea agreement, a sentence of 240 months actual incarceration was appropriate.

The defendant also agreed to waive indictment.

At the defendant's sentencing, the government provided the court with the following

overview as to why the case against the defendant resolved itself in a stipulated sentence:

> Ultimately Mr. Carter pled to a one-count information charging a crime that
> is still a sex crime but has a cap of 20 years. As the court is aware under
> §2G1.3 of the Sentencing Guidelines, had Mr. Carter been charged and
> convicted of a 159[1] [sic] charge with juveniles, most likely his sentence

would have been well over 20 years. And if he had gone to trial, it most likely [would have] been a life sentence. So through the advice of Mr. Burnside and Mr. Shealy, Mr. Carter entered into [a] cooperation plea agreement with the Government. We agreed to [an] 11(c)(1)(C) for his timely cooperation. Again, he received the benefit on the front end.

(ECF No. 109, Transcript at 3:1–12.)

The Presentence Report (PSR) (ECF No. 48) proposed a total offense level of 34 and a criminal history category of II, producing a guideline imprisonment range of 168 to 210 months. At sentencing, without objections, Judge Childs accepted the plea agreement and sentenced the defendant to a term of imprisonment of 240 months, as agreed to under Rule 11(c)(1)(C), as well as a lifetime term of supervision.

In the defendant's first motion to vacate his conviction pursuant to 28 U.S.C. § 2255, the defendant claimed ineffective assistance of counsel. Judge Childs granted the government's motion for summary judgment and denied the defendant's motion as well as a certificate of appealability (ECF No. 122). The defendant's appeal of that denial was unsuccessful.

The defendant has served approximately 7 years of his 20 year sentence. He is presently housed at the Federal Correctional Institution in Berlin, New Hampshire. His anticipate release date from the BOP is February 22, 2034.

## STANDARD OF REVIEW

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010).

8

However, the commonly termed "compassionate release" provision of § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. Under this statute, a district court may reduce a criminal defendant's sentence if the court finds extraordinary and compelling reasons that warrant such a reduction after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, as well as "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act of 2018, courts could only consider compassionate release upon motion of the Bureau of Prisons (BOP). *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Today, however, § 3582(c)(1)(A) allows a defendant to file his own motion for compassionate release directly with the federal court so long as he first fully exhausts all administrative remedies.

Although Congress did not define "extraordinary and compelling" reasons in § 3582(c)(1)(A), the Sentencing Commission addressed the issue in a Policy Statement— United States Sentencing Guideline (U.S.S.G.) § 1B1.13—which provided the BOP with several categories of "extraordinary and compelling reasons" to consider. *McCoy*, 981 F.3d at 276.

For years following the passage of the First Step Act in 2018, the Sentencing Commission did not update § 1B1.13 to account for motions filed directly by defendants, meaning that the policy did not bind the courts when presented with a defendant's motion for compassionate release. *Id*. at 281– 82, 284. A court, therefore, remained "empowered . . .

9

to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original).

However, on November 1, 2023, the Sentencing Commission, via Amendment 814, amended U.S.S.G. §1B1.13(b)(1)–(6) to address compassionate release motions brought directly by a defendant and to clarify and expand the list of what may qualify as an extraordinary and compelling reason to support a sentence reduction.  The qualification list falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions.  The policy statement also recognizes the possibility that the BOP could identify other grounds that amount to extraordinary and compelling reasons.

As is relevant here, U.S.S.G. §1B1.13(b)(5) states a potential qualification if the defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Additionally, § 1B1.13(b)(6) declares that if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may

be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. First, the court determines whether extraordinary and compelling reasons support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Finally, if the court finds that an extraordinary and compelling reason warrants relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. See *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021); *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021).

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

Finally, the defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

Here, the government concedes the defendant has exhausted his administrative remedies with the BOP. Thus, this court will proceed to review the matters on the merits.

ANALYSIS

*First Step Act Motions for Compassionate Release*

The defendant has filed numerous motions and supplements which this court has carefully considered. Each claim will be addressed in turn, although many arguments are repetitive.

I. *Medical/Mental Health Circumstances*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate

12

release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

After November 1, 2023, § 1B1.13(b)(1) sets out extraordinary and compelling reasons under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is—(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—>(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;  (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or

death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and (iii) such risk cannot be adequately mitigated in a timely manner.

The defendant claims that he is in a high risk category of contracting COVID-19 due to him being an overweight African American man with a seriously low while blood cell count. The defendant admits that he had a vaccine in July 2021 and has asked for a booster, but has not received one. He states that in July 2020 he contracted a milder version of COVID-19 and became extremely ill. Fortunately, the threat of COVID has now greatly subsided and there does not exist at present an ongoing public health emergency declared by the appropriate federal, state or local authorities.

The defendant states that since being incarcerated at the BOP, he has been diagnosed with PTSD, severe depression, control impulse, paranoia, schizophrenia, and severe anxiety since 2019. He complains that it has been extremely difficult for him to navigate prison life and provide self care because his prescription medicine causes him to sleep for extreme hours which causes him to miss the pill line. He also states that is not able to take showers or groom himself as the medicine he takes keeps him from being unable to get out of bed most days, puts him in confrontations with other inmates, and leads to his mistreatment by the other inmates.

Aside from the medicine's side effects, the defendant says that his severe anxiety makes him have shakes and extreme headaches. His severe paranoia causes him to be jumpy and he cannot allow anyone to walk or stand behind him. He says he has a hard time sleeping because he hears voices and that is driving him insane.

14

The defendant complains that the BOP does not have the resources to provide him with the necessary counseling sessions.  He asserts that he is having a complete breakdown and his mental health is deteriorating and he cannot properly care for himself because the BOP is not giving him the proper care he needs.

The government argues that the defendant has not presented any evidence of deficient BOP medical care and that nothing in this record suggests that the BOP is unwilling or unable to provide the defendant with mental health treatment should he seek it.

In its response in opposition, the government has filed sealed copies of the defendant's medical records from October 2022 through January 2024 which this court has reviewed. The defendant has been diagnosed with anxiety, major depressive disorder, schizoaffective disorder, PTSD, and abdominal pain that is in remission.  As of December 18, 2023 Clinical Encounter Notes, the defendant takes Risperidone, Mirtazapine, and Buspirone.  He was also scheduled for a January 18, 2024 routine psychiatry consult.  On his October 23, 2023 Clinical Encounter, he requested a renewal of his psychotropic medication and that he would like to be placed back ono his meds.

The January 2, 2024 Psychology Services Medication Information Comments noted that the defendant is currently a CARE1-MH inmate. Evaluation by psychology staff has found no evidence of a need for frequent mental health intervention or for a higher care level. Inmate has been able to maintain appropriate functioning and sufficient adjustment, with minimal contact with Psychology Services. Psychology has received no information that would prompt a perceived need for intervention (e.g., self-referral, staff referral, observed

distress, decline in functioning, etc.). The Comments also noted that the inmate (Carter) will remain on CARE1-MH status, and per policy will be monitored by psychology services as needed (i.e., per his request or as indicated by his psychological presentation).

An SHU Review from November 22, 2023 noted no significant mental health issues, that his threat to self and others was low, and that his adjustment was satisfactory with segregation not detrimental. The defendant was monitored while he was in SHU. He denied the presence of any current mental health complaints, denied suicidal ideation or intent, and he declined the use of the psychology services at this time. SHU staff reported no concerns regarding his functioning or mental health.

While the defendant spends a good portion of his motions and replies complaining of the conditions of his confinement at the BOP, such matters must be properly raised and exhausted with the BOP prior to review by a federal court. The defendant may raise such claims in a civil suit over the conditions of his confinement in the district of his confinement, not in a motion for compassionate release in his criminal case.

As for his mental health conditions, while unfortunate, this court is not persuaded that they meet an extraordinary and compelling reason for compassionate release under § 1B1.13(B)(i). The medical records appear to indicate that the defendant's long standing mental health issues are being well addressed by the BOP medical staff or that his ability to provide self care is not diminished. Indeed, the defendant appears to be doing very well based on his claims of rehabilitation while in prison, to include his taking classes, maintaining employment and good conduct, participation in government based programs, and

16

maintaining good relationships with his family.

The court finds that the defendant has not met his burden of showing an extraordinary and compelling reason for consideration of release based on his medical or mental health conditions.

## II. *Family Circumstances*

The defendant states that he is known as a loving father and loyal family man. He states that his mother, who lives in Florida, has experienced incredible hardship since her son has been in custody and that she is suffering from several medical conditions that impair her ability to provide self care and her conditions have progressed. He says that if he were released, he would spend all of his remaining time with his family, taking care of his mother and children.

As the government notes, under Application Note 1(C) to U.S.S.G. § 1B1.13, extraordinary and compelling reasons for a reduction in sentence exist only upon "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."

The defendant has not provided any evidence of his mother's illness or if he has other siblings that are able to care for her in while he is incarcerated. The court finds that the defendant has not met his burden to establish an extraordinary and compelling reason for compassionate release on the basis of his family circumstances.

III. *Rehabilitation*

In his first motion for compassionate release (ECF No. 295) the defendant states that he has maintained good conduct throughout his incarceration, has strived to make the most of his time, has benefitted from educational courses, and has helped others.  He contends that he has been a model inmate during his almost 7 years of incarceration, has received no disciplinary infractions, has maintained employed, has completed his drug education programs, has participated in government based programs, and has taken part in the Federal Responsibility Payment Program.  He also notes that he has maintained a relationship with his family and loving children.

The government correctly points out that rehabilitation alone does not constitute an extraordinary and compelling reason for a reduction in sentence 28 U.S.C. § 944(t).  However, the court may consider rehabilitation and other post-conviction conduct, when paired with other factors, as an "extraordinary and compelling reason[ ]" for relief. 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Davis*, No. 21-6960, 2022 WL 127900, at *771 (4th Cir. Jan. 13, 2022) ("successful rehabilitation efforts can be considered as 'one among other factors' " (*quoting United States v. McCoy*, 981 F.3d 271, 286 n.9 (4th Cir. 2020)).

According to the BOP Sentry Report, the defendant has had two serious recent disciplinary infractions: (1) a February 5, 2023 incident of possessing a hazardous tool (level 108 offense); (2) and an April 22, 2024 incident of possessing a hazardous tool (a level 108) offense).  Offenses in the 100-level are considered the most serious at the BOP.

The defendant's rehabilitation argument does not articulate an extraordinary or compelling reason for a reduction in sentence in light of the full considerations herein of other matters raised by the defendant and the factors under 18 U.S.C. § 3553(a).

## IV.   *Other Reasons under § 1B1.13(5)*

The defendant argues that the government engineered a 20-year sentence with a mandatory minimum and that he did not deserve a 20-year sentence.  He argues that defendants charged with § 2422(B) average a 10 to 12 year sentence, and murders average around 15 years.  He says his case is unique and extraordinary and compelling because he went over and beyond in luring the alleged victims into being apprehended by their parents, such that he really helped the victims he was trafficking.

The defendant states that he was charged with § 2422(B), that he and others known as co-participants, aiders and abettors jointly undertaking criminal activity that is a cell phone connected to the intent to persuade individuals who had not attained the age of 18 to engage in sexual activity.  He contends that he continuously explained to his defense counsel that he did not know the girls' ages and as soon as he learned they were under the age of 18, he contacted their parents after luring them into being captured.  He argues that Judge Childs accepted the Rule 11(c)(1)(C) plea agreement and that he lacked the mens rea required in his case.  Thus, he claims there was an error in his guilty plea.

As set out earlier in this order, the defendant and government entered into a written Plea Agreement with a stipulated sentence of 240 months pursuant to Fed. R. Crim. P. 11(c)(1)(C).

The defendant also contends that he pleaded guilty to an Information of conspiring 18 U.S.C. § 2422B attempted §1594(c) and § 1591 are analogous to § 2422(b).  He says that his charging information heavily tracks the conspiracy language in § 1594(c) but has the penalty statute of § 1594(c) which has no mandatory minimum.  He also claims that he pleaded guilty to an 11(c) but the USSG guidelines were for 168 to 210 months which is above the guidelines sentence.  The defendant relies *United States v. McCoy,* 981 F.3d 271 (4th Cir. 2020), for his argument that,

The defendant argues that he qualifies for compassionate release because his sentence would be shorter if he had not entered into his Rule 11(c)(1)(C) plea.  However, he entered into a knowing and voluntary plea of guilty to enticement of a minor and entering into a knowing and voluntary plea cannot serve as a basis for compassionate release.

The government counters that the defendant's claim is really a motion to vacate his conviction or sentence under 28 U.S.C. § 2255 and as such, it is foreclosed by *United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022). Under *Ferguson*, the claim of Guideline error that the defendant raises fails as a matter of law to qualify as an extraordinary and compelling reason for compassionate release.  *Ferguson* holds that the compassionate release statute must be read together with other statutory provisions governing the review of sentences, and a defendant may not use compassionate release to evade limits on post-conviction relief. *Id*. at 270.  The defendant's attack on his sentence is a remedy that is exclusively within the province of § 2255." *Id*. at 272.

20

This court agrees with the government's reasoning and finds the defendant's claim on this issue is foreclosed under *Ferguson*. Additionally, the defendant has already filed two § 2255 motions, thus he would need permission from the Fourth Circuit Court of Appeals to file a successive motion.

In any event, the government reiterates its claims that the § 3553(a) factors continue to weigh in favor of the full sentence imposed. The government contends that even if the defendant could establish an extraordinary and compelling reason for his release, he continues to pose a danger to public safety if released. The government contends that the seriousness of the defendant's offense and the nature and circumstances of the offense warrant the full extent of the sentence the defendant received. Moreover, the government suggests that the defendant's relatively weak arguments regarding whether he has presented "extraordinary and compelling reasons" for release, taken with the severity of his wrongdoing, demonstrate a disregard or lack of awareness of how serious his crimes were. Therefore, a reduction would undermine respect for the law.

Finally, the government asserts that deterrence (both specific and general) also advise against any reduction in the defendant's sentence as such would potentially expose the public to further such crimes by the defendant.

As the court finds no extraordinary and compelling reason here or on any of the issues raised by the defendant, it is not necessary for the court to address the § 3553(a) factors.

CONCLUSION

The court has carefully considered the totality of the record before it and conducted an individualized analysis of the facts and issues raised by the parties under the recent changes in sentencing laws and amendments to the Guidelines.

In summary, the court does not find an extraordinary and compelling reason for consideration of compassionate release on any of defendant's claims relating to his medical circumstances, his family circumstances, or his claims of a disparate sentence or guideline error.

For the reasons stated herein, the defendant's motions (ECF Nos. 295, 327, 337)) are respectfully denied.

The defendant has also filed a motion for a status update (ECF No. 341) and a motion to expedite (ECF No. 351). Those motions are now moot as a result of this court's order on the motions for compassionate release.

IT IS SO ORDERED.

October 4, 2024                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                          United States District Judge

22